UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RIKY PERASSO,

          Plaintiff,

   v.

WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,

          Defendants.

CASE NO. 3:18-CV-5934-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: May 1, 2020

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently pending before the Court is Defendants Washington State Department of Corrections ("DOC"), Michael Gleason, Michael Wayman, and Vincent Stroup's Motion for Summary Judgment. Dkt. 45.[1] The Court concludes Plaintiff Riky Perasso failed to administratively exhaust his § 1983 claims. The Court also concludes the Court

---

[1] In the Complaint, Defendant Vincent Stroup's name is spelled "Strope." Dkt. 1-2. The parties appear to agree the proper spelling is "Stroup." *See* Dkt. 45, 48.

REPORT AND RECOMMENDATION - 1

lacks subject matter jurisdiction over Plaintiff's state law negligence claim. Accordingly, the Court recommends the Motion (Dkt. 45) be granted and this case be closed.

## I. Background

Plaintiff alleges that, while he was housed at the Stafford Creek Corrections Center ("SCCC"), he was attacked by three inmates during a religious program. Dkt. 1-2. He contends Defendants Gleason and Wayman received advanced notice of the attack, but did not attempt to prevent the assault or protect Plaintiff. *Id*. Plaintiff alleges Defendant Stroup did not intervene during the assault. *Id*. Plaintiff asserts federal constitutional claims and a state law negligence claim. *Id*.

Defendants filed the Motion, with supporting evidence, on January 30, 2020. Dkt. 45-47. On February 24, 2020, Plaintiff, who is proceeding with counsel, filed a Response, with supporting evidence. Dkt. 48-50. Defendants filed a Reply and additional evidence on February 28, 2020. Dkt. 51-55.[2]

## II. Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

---

[2] Ordinarily, "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996) (punctuation omitted). Under the Local Civil Rules, a party may file a surreply requesting the Court strike materials attached to a reply. LCR 7(g). Plaintiff did not file a surreply and has not otherwise objected to the evidence attached to the Reply. Therefore, the Court will consider this evidence in deciding the Motion. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("If a party does not object to or challenge the improper submission of new evidence before the district court, the party who fails to object has waived any challenge on the admissibility of [the] evidence." (internal quotations omitted)); *Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011) (no error in district court's reliance on new evidence submitted in reply paper where the party failed to object).

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**III.   Discussion**

In the Motion, Defendants contend this case should be dismissed because: (1) Plaintiff failed to exhaust the administrative remedies available to him regarding his civil rights claims; (2) Plaintiff failed to submit a tort claim notice; (3) the DOC is not a proper defendant in a § 1983 action; and (4) no genuine issue of material fact exists regarding Plaintiff's federal and state law claims. Dkt. 45.

A.   <u>Exhaustion of Administrative Remedies</u>

Defendants first assert Plaintiff failed to exhaust the administrative remedies available to him regarding his § 1983 claims. Dkt. 45. Plaintiff argues that he was unable to timely exhaust his administrative remedies due to his physical and mental condition following the assault and, therefore, he has met the exhaustion requirements. Dkt. 48.

1. *Legal Standard*

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

Failure to exhaust administrative remedies is properly brought as a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was an available administrative remedy and the offender failed to exhaust the available remedy, the burden shifts to the plaintiff. The plaintiff must show there was something about his particular claim which made the "existing and generally available administrative remedies effectively unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

2.  *Defendants' Evidence*

Defendants' evidence shows prisoners in the custody of the DOC may file administrative grievances pertaining to several routine matters, including conditions of confinement, staff conduct, or retaliatory conduct. Dkt. 47, Frederick Dec, ¶ 7; Dkt. 47, p. 15. Prisoners may also file emergency grievances when there is a potentially serious threat to the life or health of an inmate or staff member, or involve a potential threat to the orderly operation of a facility. Dkt. 14, p. 13. Under the DOC policy, the grievance procedure consists of four levels of review. Dkt. 47, Frederick Dec, ¶ 10. Both routine and emergency grievances are initially filed at Level 0. *Id*. At Level 0, the facility's "grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting or additional information, returns the complaint as not grievable or not acceptable, or accepts the complaint and processes it as a formal grievance." *Id*. After satisfactory review of the informal grievance at Level 0, the grievance coordinator accepts routine and emergency grievances as formal grievances at Level I and complaints alleging staff misconduct at Level II. *Id*.

If the grievance proceeds beyond Level 0, the grievance coordinator issues a formal response at Level I. Dkt. 47, p. 24. A prisoner may appeal the denial of either a routine or emergency grievance to the superintendent of the facility at Level II. *See id.*; Dkt. 47, Frederick Dec, ¶ 10. "Inmates may appeal all Level II responses to [DOC] headquarters in Tumwater, where they are re-investigated" at Level III. Dkt. 47, Frederick Dec., ¶ 10. Level III is the final level of review and a Level III response cannot be appealed. *See id*. at ¶¶ 10-11; Dkt. 17, p. 24.

An inmate has twenty "working days from the date of an incident to file a complaint;" however, exceptions to the filing deadlines are allowed if there is a valid reason for the delay.

1 Dkt. 47, Frederick Dec., ¶ 11. An inmate then has five working days from the time he receives a
2 response to Level I and II grievances to file an appeal. *Id*.

3 Here, evidence shows Plaintiff filed a grievance on May 19, 2017, complaining that he was
4 assaulted by three inmates while at a religious program on October 19, 2016. Dkt. 47, p. 3. Plaintiff
5 filed the grievance more than seven months after the assault and did not provide any explanation
6 for the delay in filing the grievance. *Id*.; Dkt. 47, Frederick Dec., ¶ 17. The grievance was not
7 accepted because it was outside the twenty-day timeframe to submit a complaint. *Id*.; Dkt. 47,
8 Frederick Dec., ¶ 17. There is no evidence Plaintiff appealed the grievance denial. As Plaintiff did
9 not pursue this grievance through each step of the grievance process, this grievance does not satisfy
10 the exhaustion requirements.

11 Plaintiff also filed a grievance on November 14, 2017, more than a year after he was
12 assaulted. Dkt. 47, p. 44; Dkt. 47, Frederick Dec., ¶ 17. In this grievance, Plaintiff complained of
13 the lack of mental health treatment he received at Monroe Correctional Complex following the
14 October 2016 assault. Dkt. 47, p. 44. This grievance is unrelated the allegations pled in the
15 Complaint. Regardless, the grievance was not exhausted through each step of the administrative
16 process. *See* Dkt. 47, Frederick Dec., ¶ 17. Therefore, this grievance does not satisfy the exhaustion
17 requirements.

18 The Court finds Defendants have carried the initial burden of showing the absence of
19 exhaustion in this case. The undisputed evidence presented by Defendants show there was a
20 grievance procedure in place at the time of the incident complained of in the Complaint. Plaintiff
21 was aware of the grievance process and participated in the grievance process. Plaintiff filed an
22 initial complaint, which was denied because it was not timely filed. Plaintiff did not provide any
23 information to the grievance coordinator explaining the delay and the grievance coordinator did not
24

REPORT AND RECOMMENDATION - 6

waive the twenty-day period. The grievance was denied and Plaintiff did not appeal. Plaintiff, therefore, failed to properly complete the entire grievance process for the § 1983 claims alleged in his Complaint.

3. *Plaintiff's Response*

The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010). "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172). The Supreme Court recently held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016).

Plaintiff contends he exhausted his administrative remedies because he was "mentally incapacitated due to the severe head injuries he sustained from th[e] assault." Dkt. 48.[3] In his Declaration, Plaintiff states:

> Between October 19, 2016 and May 19, 2017, I was mentally incapacitated due to my head injury. I could not function mentally and I was completely out of it. It took me a very long time to recover, and I could not write a grievance regarding the attack and the negligence of the corrections staff until May 19, 2017.

Dkt. 49, Perasso Dec., ¶ 14.

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *Harvey v. Jordan*, 605 F.3d 681, 683-84 (9th Cir. 2010). Therefore, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Woodford*, 548 U.S. at 88.

Plaintiff's conclusory statement that he was mentally incapacitated is not sufficient to excuse proper exhaustion. Plaintiff did not provide facts or evidence to support his statement. For example, Plaintiff did not provide medical records showing he was incapacitated or showing the extent of his injuries. He also did not adequately explain how his head injury prohibited him from filing a grievance within the twenty-day time period. Further, there is evidence Plaintiff completed a writer's workshop during the period of time he was allegedly incapacitated, which contradicts his conclusory statement. *See* Dkt. 55, Wayman Dec., ¶ 5, Ex. A.

---

[3] Plaintiff cites to the Code of Federal Regulations ("C.F.R.") regarding the federal administrative remedy requirements to support his position that his head injury warranted an extension of time to file his grievance. *See* Dkt. 48, p. 6 (citing 28 C.F.R. § 542.14(b)). However, the issue is whether Plaintiff complied with the DOC's prison policies for filing grievances. Therefore, the Court is not persuaded by Plaintiff's reliance on the C.F.R. *See Jones v. Bock*, 549 U.S. 199 (2007) (the PLRA "requires prisoners to exhaust *prison grievance procedures*" (emphasis added)).

1       Moreover, Plaintiff has failed to show the grievance process was unavailable to him.

2 Plaintiff could have sought an exception to the twenty-day filing deadline. However, when he

3 filed the grievance, he did not provide a reason for the delay or request an extension. *See*

4 *Looman v. Montana*, 2012 WL 5287949, at *4 (D. Mont. Aug. 7, 2012) (finding grievance

5 process still available when the plaintiff stated he was physically and mentally incapacitated

6 during the time period to file a grievance but the grievance process allowed for a waiver of the

7 time limits). Plaintiff also did not appeal the denial of his grievance. *See* Dkt. 47, p. 28 (offenders

8 can appeal level 0, level I, and level II grievance decisions).

9       For these reasons, the Court finds Plaintiff has not shown he properly exhausted the

10 administrative remedies available to him or shown that he should be excused from properly

11 exhausting the claims alleged in the Complaint. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d

12 495, 497 (9th Cir. 2015) ("a self-serving declaration does not always create a genuine issue of

13 material fact for summary judgment: The district court can disregard a self-serving declaration

14 that states only conclusions and not facts that would be admissible evidence"); *F.T.C. v. Publ'g*

15 *Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997) ("A conclusory, self-serving affidavit,

16 lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of

17 material fact.").

18       As Plaintiff did not fully follow the proper grievance procedures available, he has not

19 overcome Defendants' showing that he failed to exhaust administrative remedies available to

20 him. Therefore, the Court concludes Plaintiff failed to properly exhaust his § 1983 claims and

21 recommends the § 1983 claims be dismissed without prejudice. *See Wyatt v. Terhune*, 315 F.3d

22 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the

23 district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper

24

1  remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 F. App'x 368,
2  369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper
3  remedy for non-exhaustion is dismissal without prejudice).

4        B.  <u>Negligence Claim</u>

5        Defendants next assert the Court lacks subject matter jurisdiction as to Plaintiff's state
6  negligence claim because Plaintiff failed to comply with Revised Code of Washington Section
7  4.92 ("RCW 4.92"), a mandatory prerequisite to commencing suit against state employees. Dkt.
8  45.

9        RCW 4.92 requires aspiring plaintiffs to present a claim to the Office of Risk
10 Management sixty days prior to commencing any tort action against the state or any state
11 "officer, employee, or volunteer, acting in such capacity." *Hyde v. Univ. of Wash. Med. Ctr.*, 186
12 Wash. App. 926, 929 (2015). The purpose of the tort claim requirement is to allow "government
13 entities time to investigate, evaluate, and settle claims." *Lee v. Metro Parks Tacoma*, 183 Wash.
14 App. 961, 968 (2014) (quoting *Medina v. Pub. Util. Dist. No. 1 of Benton Cnty.*, 147 Wash. 2d
15 303, 310, (2002)). Failure to substantially comply with the statutory notice filing provisions
16 deprives the court of subject matter jurisdiction, *Schoonover v. State*, 116 Wash. App. 171, 177
17 (2003), and is grounds for dismissal, *Reyes v. City of Renton*, 121 Wash. App. 498, 502 (2004).
18 *See also Teeman v. Washington*, 2015 WL 6442735, at *4 (E.D. Wash. Oct. 23, 2015).

19       Defendants contend Plaintiff did not present a claim to the Office of Risk Management.
20 Dkt. 45. Plaintiff's counsel, Darryl Parker, submitted a declaration stating his "legal staff filed a
21 standard tort claim to the Washington State Office of Risk Management on behalf of Plaintiff
22 Riky Perasso" on April 9, 2018. Dkt. 50, Parker Dec., ¶ 3. Parker also attached a copy of the tort
23 claim form that his legal staff filed. Dkt. 50-1. There is, however, no evidence the tort claim was
24

received by the Office of Risk Management. *See* Dkt. 50, Parker Dec.; Dkt. 50-1; Dkt. 54, Soliz Dec.

Here, Plaintiff's evidence is not sufficient to show Plaintiff complied with the RCW 4.92 filing provisions. While Parker states his legal staff filed a tort claim on April 9, 2018, Parker is not the person who filed the tort claim and, thus, does not have personal knowledge of whether the tort claim was actually submitted to the Office of Risk Management. Further, the tort claim form submitted to this Court (Dkt. 50-1) does not contain any evidence the tort claim was filed with the Office of Risk Management. Therefore, Plaintiff has not shown he complied with the notice filing provisions of RCW 4.92 and the state law negligence claims must be dismissed. *See McCoy v. Salish Kootenai Coll., Inc.*, 334 F. Supp. 3d 1116, 1119 (D. Mont. 2018), *aff'd*, 785 F. App'x 414 (9th Cir. 2019) ("When a defendant moves to dismiss a case for lack of subject matter jurisdiction, the plaintiff has the burden of proving by a preponderance of the evidence that the court possesses jurisdiction.").

Even if Plaintiff complied with RCW 4.92, the undersigned recommends the Court decline to exercise supplemental jurisdiction over the state law claims. The Court has determined Plaintiff's federal claims must be dismissed for failure to exhaust. *See* Section III, A., *supra*. Therefore, the only remaining claim raised in the Complaint is Plaintiff's state law negligence claim. *See* Dkt. 1-2.

A district court may exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)); *Artis v. District of Columbia*, 138 S.Ct. 594 (2018). However, "the federal court should decline the exercise of jurisdiction" when "the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. § 1367(c).

As stated above, the Court finds Plaintiff has failed to exhaust the administrative remedies available to him regarding his federal claims and these claims must be dismissed. *See* Section III, A., *supra*. As there are no federal claims remaining, the Court finds it appropriate to decline the exercise of supplemental jurisdiction over the sole remaining state law negligence claim. Accordingly, even if Plaintiff complied with RCW 4.92, the Court recommends Plaintiff's state law negligence claim be dismissed.

### IV. Conclusion

For the above stated reasons, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 45) be granted and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May 1, 2020, as noted in the caption.

Dated this 10th day of April, 2020.

_____
David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12